VOLKSWAGEN INSURANCE COMPANY, Plaintiff, *v.* EDWIN G. WHITTINGTON *et al.*, Defendants.—(SHEILA WHITTINGTON, Defendant and Third-Party Plaintiff-Appellee, *v.* HAROLD J. O'CONNELL *et al.*, Third-Party Defendants-Appellants.)

First District (5th Division)   No. 77-1008

Opinion filed March 23, 1978.

James H. Canel, of Chicago, for appellants.

No appearance for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an interlocutory appeal pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1975, ch. 110A, par. 308) from an order denying a motion to quash service of process on the third party defendants, Harold J. O'Connell and Dixie Beer Distributors, Inc. (hereinafter "Dixie"), and identifying the following question of law for our review: whether the third-party defendants submitted to jurisdiction conferred by section 17(1)(a) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(a)) through transacting business within Illinois even though the accident and injuries alleged arose out of the transaction of business outside of the State? We reverse and remand with directions.

Volkswagen Insurance Company (hereinafter "Volkswagen") issued an automobile insurance policy to Edwin G. Whittington on July 21, 1974. Sheila Whittington, Edwin's daughter, was involved in an accident that same day while driving her father's car in Indiana. Subsequently Edwin and Sheila filed a claim with Volkswagen under the uninsured motorist provisions of Edwin's policy. In the claim Sheila alleged that her father's car was struck by a hit-and-run vehicle whose identity was unknown and unascertainable. On February 2, 1976, Volkswagen filed an amended complaint for a declaratory judgment against the Whittingtons. In this complaint Volkswagen alleged that Sheila lost control, travelled across a median strip and collided with an oncoming vehicle driven by Richard E. Munsterman and insured by Allstate Insurance Company. From these allegations Volkswagen concluded that Sheila's injuries did not result from contact with an uninsured motor vehicle and that the uninsured motorist provisions of Edwin's policy are inapplicable. In an answer to the amended complaint Sheila alleged that she was hit by a truck traveling in the same direction and denied that she struck Munsterman's auto.

Several months later Sheila filed a third-party complaint against O'Connell and Dixie. In this complaint Sheila alleged that O'Connell drove the truck which struck her while he was in the scope of his employment by Dixie, who either owned, or leased, the truck. Although the record does not reflect it, O'Connell and Dixie admit on appeal that they were subsequently served with summons in Kentucky. Thereafter they filed a special and limited appearance, a motion to quash service of process and an affidavit in support of the motion. The affiant, Joseph D. Jackson, stated that he was Dixie's general manager and had held that position since 1973. He described Dixie as a wholesale beer distributor in Kentucky and added that Dixie does not conduct any business in other States with the exception of purchasing beer in Wisconsin and Illinois and

transporting it via truck to Kentucky. He further stated that O'Connell was not involved in the accident in question and explained that O'Connell merely observed the accident while traveling through Indiana en route to Wisconsin for a load of beer.

Sheila Whittington moved for denial of the motion to quash service of process and an affidavit signed by one of her attorneys accompanied her motion. The third-party defendants subsequently filed a memorandum of law in support of their motion. Both documents refer to a discovery deposition in which O'Connell stated that he averaged six or seven trips to Illinois each month and that while his ultimate destination on the July 21, 1974, trip was Wisconsin, his route took him through Illinois. O'Connell further stated in the deposition that Dixie employed other drivers who made trips to Illinois and had employed up to 13 or 14 drivers at one point in time, but neither that point nor the number of drivers normally employed by Dixie were specified. Additionally, it is not clear from O'Connell's deposition how many trips to Illinois, and how many trips through Illinois to Wisconsin, Dixie's other drivers averaged each month or how many of them were on Illinois roads at any given time. Finally, neither O'Connell's deposition nor the aforementioned affidavits indicate that Dixie distributed beer in Illinois and Jackson expressly stated that Dixie does not distribute outside of Kentucky. Nevertheless, on the basis of O'Connell's deposition and the affidavits before it the court below found during a hearing on the motion to quash that Dixie had 13 or 14 drivers in Illinois at various times and that Dixie purchased beer in Illinois for delivery in Illinois. After the hearing the court entered an order denying the motion to quash service of process on the third-party defendants. In the same order the court identified the aforementioned question of law. The third-party defendants then filed an application for leave to appeal pursuant to Supreme Court Rule 308 from the interlocutory order denying their motion and identifying the question of law.

We agreed with the court below that there was a substantial basis for a difference of opinion over the question and that an immediate appeal from the order could materially advance the ultimate termination of the litigation. Therefore we granted leave to appeal.

OPINION

■ ■ ■ Section 17 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 17), commonly referred to as the Illinois long arm statute, extends the personal jurisdiction of Illinois courts over nonresident defendants to the extent permitted by the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) as interpreted in *International Shoe Co. v. Washington* (1945), 326 U.S. 310,

90 L. Ed. 95, 66 S. Ct. 154, and its progeny. (See *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 328, 368 N.E.2d 88; *Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673.) In part, the long arm statute accomplishes this expansion through section 17(1)(a), which provides:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action *arising from* the doing of any of such acts:

(a) The transaction of any business within this State;" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(a).)

This provision confers personal jurisdiction over nonresident defendants in actions arising from their transaction of business within Illinois. (See *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 298, 367 N.E.2d 118; *First National Bank v. Screen Gems, Inc.* (1976), 40 Ill. App. 3d 427, 433-34, 352 N.E.2d 285. See generally *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451, 454, 216 N.E.2d 137.) The purpose of the phrase "arising from" is to insure that there is a close relationship between a cause of action against a nonresident defendant and his jurisdictional activities. The minimum relationship required by the phrase is that the plaintiff's action "be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of Illinois courts." See *First National Bank*, 40 Ill. App. 3d 427, 434, 352 N.E.2d 285.

■■ It is settled that a nonresident defendant can "transact business" in Illinois without being physically present here and that such business can subject him to section 17(1)(a) jurisdiction. (*First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 423-24, 319 N.E.2d 324; see, *e.g., Ward v. Formex, Inc.* (1975), 27 Ill. App. 3d 22, 325 N.E.2d 812.) In the instant case, however, at the time of the alleged accident O'Connell was neither physically present in Illinois nor transacting business in Illinois from afar. It appears that the only contact O'Connell had with Illinois during his July 21, 1974, trip to Wisconsin was the use of an Illinois highway some time after his truck allegedly struck Sheila Whittington's auto in Indiana. Assuming O'Connell did strike her auto, Sheila's action does not arise from a transaction of business *within Illinois* at or around the time of the accident.

■■■ With reference to Dixie's transaction of business within Illinois prior to the alleged accident, this court has recently explained that section 17(1)(a) of the long arm statute does not confer jurisdiction over a foreign corporation doing business in Illinois in an action bearing no relationship to the business done in Illinois. (See *Braband v. Beech Aircraft Corp.*, 51 Ill. App. 3d at 298, 367 N.E.2d 118.) Simply stated, doing business in

Illinois, *by itself*, is not a sufficient contact with Illinois to trigger long arm jurisdiction under section 17(1)(a). The foreign corporation's business within Illinois must be related to the cause of action in question before section 17(1)(a) will confer personal jurisdiction. If none of this business gives rise, at least in part, to the cause of action in question, then no such jurisdiction exists. Dixie's business within Illinois prior to the alleged accident is not related to Sheila Whittington's action.

In sum, section 17(1)(a) of the long arm statute does not confer jurisdiction over either of the third-party defendants. Accordingly we reverse the order of the Circuit Court of Cook County and remand this cause to that court with directions that it grant the motion to quash service of process on the third-party defendants and dismiss this cause for lack of jurisdiction.

Reversed and remanded with directions.

SULLIVAN, P. J., and MEJDA, J., concur.