**Wanda OBERMEYER and James Obermeyer, Plaintiffs,**

v.

**Philip GILLILAND, H.B. Enterprises Inc., d/b/a Lee's Wrecker Service, and Robert Read, Defendants.**

No. 94–3123.

United States District Court,
C.D. Illinois,
Springfield Division.

Jan. 6, 1995.

154

Jay H. Janssen, Joseph L. Frank, Peoria, IL, for plaintiffs.

James J. Manning, Jeanne L. Wysocki, Peoria, IL, for defendants.

## OPINION

RICHARD MILLS, District Judge:

Traffic accident in Michigan.

Interstate truck driver from Michigan routinely hauls to and from Illinois.

Does this Court in Illinois have *personal* jurisdiction over him?

No.

## I. BACKGROUND

On July 22, 1992, Wanda Obermeyer, an Illinois resident, had car problems on Interstate I–96 near South Haven, Michigan. As a result of the problems, she was forced to call a tow truck. The responding tow truck was driven by Philip Gilliland. The tow truck was owned by Lees's Wrecker Service. Upon arrival at the scene, Mr. Gilliland attached Ms. Obermeyer's vehicle to the tow truck and with Ms. Obermeyer as a passenger began driving south on I–96. At the same time, Robert Read, a Michigan resident, was driving a semi-trailer southbound on I–96.

Mr. and Mrs. Obermeyer allege that the semi-trailer ran into the rear of the tow truck and injured Mrs. Obermeyer. They contend Mr. Read's negligence was the proximate cause of Mrs. Obermeyer's injuries. (Mr. Obermeyer seeks recovery for loss of consortium.).

The semi-trailer was owned by a Michigan resident, Donald P. Loew. Mr. Loew, however, leased the truck to Ro Mar Transportation Systems, Inc. (hereinafter Ro Mar), an Illinois corporation. Robert Read drove the truck on a route between Grand Rapids, Michigan and Chicago, Illinois. He was paid by Mr. Loew but took directions from the Ro Mar Grand Rapids terminal. The only route driven by Mr. Read was between Grand Rapids and Chicago. It is not clear, however, how many times Mr. Read made the trip from 1990, when he started working for Mr. Loew, to the date of the accident, July 22, 1992.

Defendant Read contends that the Complaint should be dismissed because this Court lacks personal jurisdiction over him, because venue is improper, and because the Complaint fails to state a cause of action under Michigan law.

## II. MOTION TO DISMISS

In ruling on a motion to dismiss, the Court "must accept the well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).

■ When the motion to dismiss is based on lack of personal jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction over each defendant. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120 (7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). Plaintiff need only make a prima facie showing to avoid dismissal. *Id.* at 1123. A motion to dismiss will not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that will entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. ANALYSIS

### A. *Personal Jurisdiction*

 In deciding a Motion to dismiss for want of personal jurisdiction in a diversity case, a federal district court looks to the law of the state in which it sits. *Dehmlow v. Austin Fireworks, Inc.*, 963 F.2d 941, 945 (7th Cir.1992). If personal jurisdiction is found under Illinois law, the next step is to determine whether asserting jurisdiction is a violation of due process. *Burnham v. Super. Ct. of California, County of Marin*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990).

 The Illinois Long-arm statute, 735 ILCS 5/2–209, however, was amended in 1989 to make Illinois law coextensive with minimum due process requirements. *Brandt Consol. Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 168–169 (C.D.Ill.1992). Thus, analysis can be limited to whether asserting jurisdiction over Mr. Read satisfies due process requirements under the Illinois and United States Constitutions.[1] *Pilipauskas v. Yakel*, 258 Ill.App.3d 47, 629 N.E.2d 733, 739, 196 Ill.Dec. 188, 194 (1st Dist.), *appeal denied*, 156 Ill.2d 566, 638 N.E.2d 1124, 202 Ill.Dec. 930 (1994).

### 1. *FEDERAL DUE PROCESS*

As noted by Judge Tinder of the Southern District of Indiana, "[the] search for the outer limits of what due process permits may be singular, but it is not simple." *Simpson v. Quality Oil Co.*, 723 F.Supp. 382, 386 (S.D.Ind.1989). "[The] determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable." *Kulko v. California Super. Ct.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). (quoting *Estin v. Estin*, 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948)).

According to the Supreme Court, due process requires that a nonresident defendant have "minimum contacts with [the forum]

such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

Minimum contacts have been defined as "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The due process clause enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

 Whether it is reasonable to require a defendant to defend a suit is determined by examining the relationship between the defendant, the forum, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). However, "[the] sufficiency of minimum contacts cannot be determined by any set formula or rule of thumb, but 'must rest on a consideration of what is fair and reasonable in the circumstances of each particular case.'" *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213 (7th Cir.1984) (quoting *Telco Leasing, Inc. v. Marshall County Hosp.*, 586 F.2d 49, 50 (7th Cir.1978)). *See Kulko v. California Super. Ct.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

 Because there are two kinds of personal jurisdiction—*specific* and *general*— whether Robert Read's contacts with Illinois justify hauling him before this Court depends on two separate tests. In order for specific jurisdiction to apply, the controversy must arise from or be related to the defendant's contacts with the forum state.[2] *Helicopteros*

---

1. Whether due process is met under the Illinois Constitution is an independent analysis. *Rollins v. Ellwood*, 141 Ill.2d 244, 565 N.E.2d 1302, 1316, 152 Ill.Dec. 384, 398 (1990). This Court, however, may look to federal law for guidance in

construing the Illinois due process guarantee. *Michael J. Neuman & Associates v. Florabelle Flowers, Inc.*, 15 F.3d 721, 725 (7th Cir.1994).

2. The distinction, if any, between "arising out of" and "related to" has not been addressed by the

*Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Conversely, general jurisdiction applies when the underlying cause of action does not arise from the defendant's contacts but the defendant has "continuous and systematic" contacts with the forum. *Id.* at 416, 104 S.Ct. at 1872.

### a. Robert Read's Contacts With Illinois

According to his affidavit, Robert Read began driving the truck leased to Ro Mar in 1990 and his regular duty involved driving between Grand Rapids and Chicago. At the time of the accident, Mr. Read was enroute to Chicago. The record, however, does not state exactly how often Mr. Read made the trip between 1990 and the date of the accident, July 22, 1992, or if he continues to make the trip. Mr. Read was paid by Mr. Loew but apparently always drove on behalf of Ro Mar. Robert Read did not pay Illinois taxes nor have an Illinois drivers license.

### b. Specific Jurisdiction

Regardless of the terminology of the test—"arose out of," "related to," or "substantive relevance," whether there was a sufficient nexus between Robert Read's contacts with Illinois and the accident is a close question. Most courts, however, in deciding cases involving truck drivers or others travelling on business to or from a forum state who are involved in accidents outside the forum state have held that there is not a sufficient nexus between the drive to or from the forum state and the controversy. *Saylor v. Dyniewski,* 836 F.2d 341 (7th Cir.1988) (Illinois court does not have jurisdiction over a defendant returning from a business trip in Illinois who subsequently is involved in an accident in Indiana); *Amos v. Pendry,* 810 F.Supp. 146 (M.D.Pa.1992) (Pennsylvania court does not have jurisdiction over a truck driver who travelled through Pennsylvania before becoming involved in an accident in New Jersey); *Simpson v. Quality Oil Co.,* 723 F.Supp. 382 (S.D.Ind.1989) (Indiana court does not have jurisdiction over a truck

driver who was filling his tanker for transport to Indiana when accident occurred in Kentucky); *Whitaker v. Krestmark of Alabama, Inc.,* 157 Ga.App. 536, 278 S.E.2d 116 (1981) (Alabama driver enroute to Georgia to make a delivery who had an accident in Alabama not subject to long-arm jurisdiction of Georgia); *Volkswagen Insurance Co. v. Whittington,* 58 Ill.App.3d 621, 374 N.E.2d 954, 16 Ill.Dec. 179 (1st Dist.1978) (Illinois court does not have jurisdiction over a Kentucky truck driver allegedly involved in an accident in Indiana despite the fact that the trucker was going to pass through Illinois enroute to Wisconsin). *See* 2 ROBERT C. CASAD, JURISDICTION IN CIVIL ACTIONS § 7.02[2][e][i] (2d ed. 1991). *Contra Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976) (California courts have personal jurisdiction over an interstate trucker from Nebraska enroute to California who struck a California resident in Nevada because contact with California "substantially related" to controversy).

■ In accordance with the majority or courts deciding the issue, this Court holds that the mere fact Robert Read was enroute to Illinois at the time of the accident does not constitute a sufficient nexus between the accident and the destination to support specific jurisdiction.

### c. General Jurisdiction

Despite the lack of specific jurisdiction, it is possible that Robert Read's contacts with Illinois were sufficiently "continuous and systematic" to warrant the imposition of general jurisdiction. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). In fact, in a case very similar to the instant one, United States District Judge James Miller of the District of Maryland held that he could assert personal jurisdiction over an out-of-state truck driver who drove a truck in Maryland because the driver "personally travel[ed] in Maryland frequently, on a regular basis, in a purposeful way, and in a manner integral to

Supreme Court. *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 415 n. 10, 104 S.Ct. 1868, 1872 n. 10, 80 L.Ed.2d 404 (1984). *See Simpson v. Quality Oil Co.,* 723 F.Supp. 382,

388–389 (S.D.Ind.1989) (discussing the three schools of thought—substantive relevance being the third—used to test for "relatedness" for specific jurisdiction purposes).

... [his] business ... of truck driver." *Carter v. Massey,* 436 F.Supp. 29, 34 (D.Md. 1977).

On the other hand, in *Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976), the California Supreme Court concluded that the defendant truck driver who had hauled loads to California at least 20 times and was licensed by the State of California did not have sufficient contacts with California to "justify general jurisdiction over him to adjudicate all matters regardless of their relevance to the cause of action alleged by plaintiff." *Id.* Likewise, Judge Tinder in *Simpson v. Quality Oil Co.,* 723 F.Supp. 382 (S.D.Ind.1989), concluded that he did not have general jurisdiction over a trucker who on "numerous occasions" delivered fuel to Indiana locations. *Id.* at 387 n. 3.

■ This Court finds no meaningful way to distinguish the *Carter, Cornelison,* and *Simpson* cases. Moreover, the Seventh Circuit and the Supreme Court have not addressed the specific issue. The Supreme Court, however, has held "that mere purchases, even occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 418, 104 S.Ct. 1868, 1874, 80 L.Ed.2d 404 (1984). Additionally, an employee's contacts with the forum are not to be judged according to his employer's contacts. *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

■ Thus, the Court is left with little clear guidance as to whether Robert Read's contacts with Illinois are sufficient to warrant general jurisdiction. Nevertheless, the Court holds that fundamental fairness mandates that the mere fact Robert Read, as part of his job, frequently drives into Illinois is not sufficient to justify subjugating him to the power of Illinois Courts for suits not arising from his work in Illinois. Hauling

him into court in Illinois for his involvement in a Michigan accident would not be foreseeable, fair or reasonable.

### 2. *ILLINOIS DUE PROCESS*

■ Defendant Read also claims the Illinois Constitution prohibits this Court from exercising jurisdiction over him. More specifically, he contends that the "fiduciary shield doctrine" applies. This Court, however, will not address the issue because asserting jurisdiction in this case violates the United States Constitution.

### B. *Failure to State a Claim Under Michigan Law*

Defendant Read also contends that the Complaint should be dismissed for failure to state a claim under Michigan law.[3] However, for the same reason discussed above in regards to the Illinois Constitution, this Court will not address the merits of this contention.

### C. *Improper Venue*

■ Because Defendant Read is not subject to the jurisdiction of this Court, venue is improper. 28 U.S.C. § 1391(a)(3). This Court, however, has the discretion to transfer the case to a district in which venue is proper, if transfer is "in the interest of justice." 28 U.S.C. § 1406(a). A district court's determination under 28 U.S.C. § 1406(a) will only be reversed upon a showing of a clear abuse of discretion. *Saylor v. Dyniewski,* 836 F.2d 341, 345 (7th Cir.1988).

Defendant Read argues that this Court should dismiss rather than transfer the case. In support, he cites *Cote v. Wadel,* 796 F.2d 981 (7th Cir.1986). In *Cote,* the Seventh Circuit affirmed a district court's decision to dismiss rather than transfer because plaintiff chose to rely on the "slight probability" of obtaining personal jurisdiction in Wisconsin instead of filing a protective suit in Michigan. *Id.* at 985.

■ *Cote,* however, is distinguishable from the instant case. Specifically, the

---

**3.** Defendant contends that Illinois choice of law principles mandate that Michigan law applies to the cause of action.

Plaintiffs in this case had more than a slight probability of obtaining personal jurisdiction in Illinois. In fact, as previously discussed, there are two cases with very similar facts, *Carter v. Massey*, 436 F.Supp. 29 (D.Md. 1977) and *Cornelison v. Chaney*, 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976), in which jurisdiction was held to be proper. Thus, although the better course would have been to file a protective suit, justice is best served if this case is transferred to the Western District of Michigan for further proceedings.

*Ergo*, Defendants' motion to dismiss (d/e 6) is ALLOWED.

This case is transferred to the Western District of Michigan.